* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Griffin, and the briefs and oral argument before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. At all relevant times hereto, the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act and defendant-employer regularly employed three or more employees.
2. All parties have been correctly designated, there is no question as to misjoinder of the parties, and the parties are subject to the jurisdiction of the North Carolina Industrial Commission.
3. An employer-employee relationship existed between defendant-employer and plaintiff at all relevant times.
4. Liberty Mutual Insurance Company is the carrier on the risk.
5. Plaintiff alleges that on January 24, 2005, he sustained an injury by accident to his right shoulder. Defendants deny that plaintiff suffered a compensable injury by accident to his right arm.
6. Plaintiff's average weekly wage is $709.65, yielding a compensation rate of $473.10 per week.
7. The issues before the Full Commission are whether plaintiff suffered a compensable injury by accident, and if so, what benefits plaintiff is entitled to receive; whether plaintiff was terminated for misconduct on May 13, 2005; whether plaintiff returned to his wage-earning capacity on August 11, 2005; and whether defendants are entitled to a credit pursuant to N.C. Gen. Stat. § 97-42.1.
 * * * * * * * * * * * *Page 3 
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 50 years old. Plaintiff holds a Master's Degree in Art from Seton Hall University. Prior to working for defendant-employer, plaintiff was an elementary school teacher and a customer service specialist for Lowe's Home Improvement (hereinafter "Lowe's"). On February 4, 2001, plaintiff began working for defendant-employer as a vendor representative and set-up specialist. Plaintiff's job duties included setting up displays for products in stores like Lowe's.
2. Plaintiff testified that on January 24, 2005, he injured his right shoulder while performing a "reset" in a Lowe's store in Pensacola, Florida. Plaintiff stated that he was standing on a shelving platform and pulled down a 75-pound cast iron ceiling fan, which began to fall due to a damaged fan bracket. Plaintiff caught the fan with his right arm, causing a hyperextension of the right arm.
3. Plaintiff testified that the incident was witnessed by co-worker Daven Hainsworth and supervisor James Mounts, and that they took the fan from him after he caught it. Plaintiff explained that Mr. Mounts repeatedly asked plaintiff if he had been injured and if he needed medical care, but that plaintiff denied any need for medical care because he was concerned that reporting the injury would cause him to lose his job. Plaintiff stated that Mr. Mounts assigned plaintiff less strenuous work for the rest of the two-week reset. On his day off at the end of the first week of the reset, plaintiff called his doctor's office for an appointment because his shoulder still hurt, but no appointments were available until several weeks later. Plaintiff then returned to work for the second week of the two-week reset. *Page 4 
4. Mr. Mounts testified that he witnessed the accident that was the cause of plaintiff's alleged injury and that it occurred on January 17, 2005, in Pensacola, Florida, at the beginning of a two-week reset. Mr. Mounts testified that plaintiff was on a ladder, not a shelving platform, at the time the fan began to fall. Although Mr. Mounts saw plaintiff catch the fan, he did not see plaintiff hyperextend his right arm. Mr. Mounts explained that, assuming the fan bracket was undamaged, the fan would not have fallen but would instead have remained partially hanging from the bracket. Mr. Mounts felt there was no actual risk of the fan falling at the time that plaintiff caught it.
5. Mr. Mounts testified that plaintiff insisted he had not been injured by the falling fan. He also denied that he assigned plaintiff to light-duty work during the remainder of the first week of the reset in Florida and the second week of the reset in Tennessee. Mr. Mounts further testified that throughout the two-week reset, plaintiff complained about defendant-employer's decision to change its payroll system from a flat day rate to an hourly wage. According to Mr. Mounts, plaintiff was convinced that defendant-employer was trying to "mess" with him and that no amount of explanation by Mr. Mounts persuaded plaintiff otherwise. Mr. Mounts indicated that he found it very difficult to supervise plaintiff and that he was relieved when the two-week reset ended.
6. On February 23, 2005, plaintiff saw Dr. Vijitha Reddy for shoulder pain. Dr. Reddy ordered an x-ray of plaintiff's shoulder, diagnosed plaintiff with bursitis or tendonitis, and wrote plaintiff out of work for a week. Plaintiff then returned to work and continued working full-time with no additional medical treatment, until May 13, 2005.
7. On May 13, 2005, defendant-employer terminated plaintiff for being discourteous to a customer, failing to follow company policies and procedures, and damaging defendant-employer's *Page 5 
reputation. Jeanette Bower, a human resources employee for defendant-employer, affirmed that plaintiff was terminated by defendant-employer for his longstanding unprofessional behavior, culminating in plaintiff being asked to leave a Lowe's store by the store's manager because of his attitude. Plaintiff alleges that he was terminated by defendant-employer on a pretense of failing to file a receipt for gas. Plaintiff has not alleged that his termination was related in any way to the January 24, 2005 injury.
8. Also on May 13, 2005, plaintiff gave defendant-employer notice of his January 24, 2005 injury. Shortly thereafter, plaintiff filed a Form 18. Plaintiff explained that he filed a claim because he was concerned that his shoulder might require further medical treatment and because he lost his health insurance when he was terminated. Plaintiff testified that he initially reported the accident as occurring in Chattanooga, Tennessee, but that a subsequent review of his own records convinced him that he had actually been injured in Pensacola, Florida. Ms. Bower testified that the first time she heard about plaintiff's alleged January 24, 2005 injury was on May 13, 2005, after plaintiff was terminated. Plaintiff's workers compensation claim was subsequently denied by defendants pursuant to a Form 61.
9. Plaintiff received unemployment compensation until November 2005, when he obtained a job as an elementary teacher. Ms. Bower explained that defendant-employer unsuccessfully opposed plaintiff's award of unemployment compensation on the basis of misconduct.
10. Because he had medical insurance again, plaintiff saw Dr. Oscar Piedad for his right shoulder, which continued to bother him. Plaintiff was referred to Dr. Paul Maluso, an orthopedist. On December 20, 2005, Dr. Maluso reviewed plaintiff's February 2005 x-rays and ordered an MRI to rule out a rotator cuff tear. The MRI showed probable impingement of *Page 6 
plaintiff's shoulder, and Dr. Maluso treated plaintiff's shoulder with steroid injections and a course of physical therapy. In February or March 2006, Dr. Maluso recommended that plaintiff undergo a CT scan; however, before the CT scan could be scheduled, plaintiff's teaching position was terminated.
11. Neither Dr. Reddy, Dr. Piedad nor Dr. Maluso testified in this case. As of the date of the Deputy Commissioner's hearing, plaintiff had not received any additional medical care.
12. Based on the evidence of record, the Commission finds that the fan incident described by plaintiff took place on January 24, 2005, in Pensacola, Florida. However, the Commission also finds that plaintiff failed to show that the incident resulted in a work-related shoulder injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of the employment. Henry v.Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950).
3. In this case, plaintiff did not sustain a compensable injury by accident arising out of and in the course of his employment on January 24, 2005. N.C. Gen. Stat. § 97-2(6). Plaintiff *Page 7 
failed to show that a causal relationship existed between the incident on January 24, 2005 and the disability for which compensation is sought.Click v. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980).
4. Therefore, plaintiff is not entitled to benefits under the Workers' Compensation Act for his alleged right shoulder injury. N.C. Gen. Stat. § 97-29.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation is hereby denied.
2. Each side shall pay their costs.
This 15 day of October, 2007.
 S/______________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/______________________ PAMELA T. YOUNG CHAIR
 S/______________________ DIANNE C. SELLERS COMMISSIONER *Page 1